KING, PLAINTIFF AND APPELLANT, *v.* FERNÁNDEZ ET AL., DEFENDANTS AND APPELLEES.

APPEAL from the District Court of San Juan in an Action of Ejectment and for Damages.

No. 2514.—*Decided May 31, 1922.*

EJECTMENT — DOUBLE SALE OF REAL PROPERTY — OWNERSHIP. — It being proved that the sales of the real property in question to the predecessors in interest of the plaintiff were made in 1904 and 1906 and recorded in 1905 and 1906, and that the same property was conveyed in 1914 to the predecessor in interest of the defendants and the conveyance was recorded in the same year, it is necessary to conclude that the plaintiff is the owner.

ID.—ID.—THIRD PERSON.—A third person can not invoke article 34 of the Mortgage Law although he may have acquired from one who appeared in the registry as the owner and may have recorded his title, when the same is annulled by virtue of another previously recorded in the same registry.

ID. — ID. — DAMAGES. — It not being shown that the defendants in this case or their predecessors in interest held in bad faith the property twice sold, a judgment for damages does not lie against them.

ID.—ID.—BUILDING ON ANOTHER'S LAND.—It being proved that the house standing on the lot twice sold was built by a person who in good faith believed he was the owner of the land upon which he built the house, the case should be governed by section 370 of the Civil Code.

The facts are stated in the opinion.

*Mr. H. G. Molina* for the appellant.

*Mr. M. M. Ginorio* for the appellees.

MR. CHIEF JUSTICE DEL TORO delivered the opinion of the court.

This is an action of ejectment and for damages and annulment of titles. The plaintiff alleged that he was the owner of a certain tract of land situated in Santurce, San Juan, P. R., within which the defendants, without valid title, were in possession of a lot of 270 square meters. The defendants admitted that they were in possession of the said lot, but

alleged that it was by virtue of a title of purchase and that the said lot was not included within the land belonging to the plaintiff. The case was duly tried and the court finally gave judgment against the plaintiff who then took the present appeal.

Is or is not the lot held by the defendants a part of the plaintiff's land? This is the first question to be considered and decided.

There is no controversy as to what are the titles held by both parties or as to their source. The land in question was worth very little some years ago. Thereafter it increased in value by reason of the growth of the city. Formerly it was a part of a farm property. Now the land is divided into lots for building purposes.

We will first ascertain what lots belong to the plaintiff and under what titles he holds them.

The plaintiff alleges and the registry shows that he is the owner of two lots which are described as follows:

"(*a*) Urban property: Lot situated in the ward of Santurce, place called Machuchal, of this city, measuring 47.70 meters on the north where it is bounded by the sea; 92 meters on the south and bounded by a street; 160 meters on the east and bounded by property of Ceferino del Valle; 131.50 meters on the west and bounded by a street and by property of Libertad Torres Grau. (Recorded at folio 143, volume 61 of San Juan, property No. 2599, second inscription.)

"(*b*) Urban property: Lot situated in the word of Santurce, placed called Machuchal, of this city, measuring 20 meters by 30 meters, making an area of 600 square meters, bounded on the north by the sea; on the south and east by property of Margarida & Company, and on the west by a street opened by the said partnership on the same property. (Recorded at folio 66, volume 38 of San Juan, property No. 2465, third inscription.)"

Both properties were acquired by King, the plaintiff, from the heirs of Charles A. Catlin by purchase as set out

in a public deed executed on December 22, 1917, and recorded in the registry.

Property (*a*) was segregated by the then owners, Margarida & Company, from property No. 2109 recorded at folio 191 of volume 49 of the municipality of San Juan in the Registry of Property of San Juan, and sold to Catlin on February 15, 1906, by a public deed which was recorded on April 23, 1906, this being the first record of the lot as an independent property.

Property No. 2109, consisting of ten acres of land, had in turn been formed by segregation from a larger property and was purchased by Margarida & Company from Raimundo Palacios. Its first record as an independent property is dated October 14, 1902.

Property (*b*) was sold to Catlin by Libertad Torres Grau by a public deed executed on February 28, 1905, and recorded in the registry on April 2, 1906, that being the second record of the property. Torres Grau had acquired it by purchase from Margarida & Company on August 31, 1904, it having been segregated by Margarida & Company from property No. 2109. The record in the name of Torres Grau is the first record of the property as an independent property and is dated July 12, 1905.

Let us see now what title the defendants have and what is its origin.

Defendant Francisca Fernández, the wife of the other defendant, Pedro Bolívar, acquired by purchase from Ramona Aragunde a lot and a house built thereon, the description of which is as follows:

"Urban property. House and lot situated in the place called Machuchal, north section of the ward of Santurce of this city, the house being a one-story frame building roofed with galvanized iron and the lot measuring 10 meters on the front, or north, where it is bounded by a street running along the seashore; 17 meters on the back, or south, where it is bounded by property of Charles A. Catlin; 20

meters on the east where it is bounded by a lot of Concepción Tudela, and 20 meters on the west where it is bounded by a street on land of Margarita & Company. These measurements give the lot an area of 270 square meters.''

The deed of sale was executed on January 26, 1917, and was recorded as the second record of the independent property on April 18, 1917.

Grantor Aragunde acquired the lot by purchase from Anastasio Quiñones and recorded her title on April 2, 1916, as the first record of the property. The lot is described as in the second record, but nothing is said about there being a house built on it.

Grantor Quiñones segregated the lot from a larger tract which he had acquired by purchase from Margarida & Company on July 1, 1914, the description of which is as follows:

''Urban property. Lot situated in the place called Machuchal, north section of the ward of Santurce of this city, with an area of 1,587.50 square meters, bounded on the north by property of Margarida & Company for 60 meters; on the south by property of Charles A. Catlin for 65 meters; on the east by property of Henry W. Dooley for 30 meters, and on the west by property of Margarida & Company for 20 meters.''

The record in the name of Quiñones is dated July 20, 1914. Margarida & Company segregated the lot so sold from property No. 2109 of ten acres, to which we have referred in describing the plaintiff's chain of title.

Hence, the registry shows without any doubt whatever that the two lots of the plaintiff and the lot of the defendants are recorded as three independent properties and that originally the three lots formed a part of a single property of ten acres, or property No. 2109, belonging to a single owner, Margarida & Company.

At first sight no conflict appears from the registry. The owner of a property may make segregations from it and sell the segregated portions. These become independent

properties and are recorded as such. Generally, the registrar keeps a record of the areas of the lots sold. This method, which is sufficient in most cases, is deficient when a large property is divided into lots. Without a plan it is then very difficult to obtain an exact idea of the situation of each lot. In the present case the record of the areas of the lots sold did not show that the area of the main property had been exhausted and the registrar recorded the segregations without any objection. In that manner the segregations which now belong to the plaintiff were recorded in 1905 and 1906 and that belonging to the defendants was recorded in 1914.

But the plaintiff maintains that the fact is that the property occupied by the defendants is comprised within his two properties; that when in 1914 Margarida & Company sold to Quiñones the 1587.50 meters from which the 270 meters now held by the defendants were segregated they had already sold the same 1587.50 meters in 1904 and 1906 to the predecessors in interest of the plaintiff, and that the existing conflict should be adjusted in accordance with the rules prescribed by law for cases of double sales.

The trial judge, in referring to the evidence examined at the trial, said:

"The court has concluded that the lot of the defendants is not comprised within the boundaries of the plaintiff's lot."

If that conclusion were correct the decision of the case would be very simple, but a careful consideration of the pleadings and the evidence leads us to a contrary conclusion and the decision of the question becomes complicated.

It is an indisputable fact that the two lots segregated by Margarida & Company from property No. 2109 and sold, respectively, one in 1904 to Torres Grau and the other in 1906 to Catlin, and now belonging to the plaintiff, were bounded by the sea, according to the descriptions given to

them when they were segregated and sold and when the conveyance was recorded in the registry.

Another fact that can not be disputed is that if the judgment appealed from is allowed to stand, the land of the plaintiff will not be bounded by the sea at any point. It would then be bounded on the north by the land sold to Quiñones, from which the lot in the possession of the defendants was segregated. Perhaps it may be well to state here that there seem to be other suits pending against the holders of all of the land sold to Quiñones.

And, lastly, it is also an undeniable fact that in order that the plaintiff's land may be bounded on the north by the sea, it is necessary to include within it the land sold by Margarida & Company to Quiñones in 1914. It is clear that when we say bounded by the sea the maritime zone is meant.

If that is the case and if this is so clear from the record, how are we to explain the judgment appealed from? It is explained by the following fact: When fixing the southern boundary of the plaintiff's larger property, or the property sold by Margarida & Company to Catlin in 1906, it was stated that it was bounded by a street, and not only were the boundaries determined by cardinal points, but the length of each boundary line was stated. In this way, measuring the land of the plaintiff from the said street, it is necessary to admit as an undisputed fact that if the length of the boundaries is taken as specified in the deed and to the larger property is added the smaller one adjoining it, or the lot sold by Margarida & Company to Torres Grau in 1904, the plaintitiff's land would not reach the seashore and there would be between it and the seashore a sufficient space to be occupied by the land sold by Margarida & Company to Quiñones in 1914. It seems that the court thought that the problem would be solved in an equitable manner by recognizing the plaintiff as the owner of the area indicated in his title deeds, though

depriving his property of its boundary with the sea, and judgment was so rendered.

Was the court authorized to do this? We think not. Let us examine the following sections of the Civil Code:

"Sec. 1372.—The obligation to deliver the thing sold includes that of placing in the possession of the vendee all that is mentioned in the contract, according to the following rules:

"If the sale of real property should be made with a statement of its area, at the rate of a certain price for a unit of measure or number, the vendor shall be obliged to deliver to the vendee, if the latter should require it, all that may have been mentioned in the contract; but should this not be possible, the vendee may choose between a proportional reduction in the price or the rescission of the contract, provided that in the latter case the decrease in the real estate is not less than one-tenth of the area given it.

"The same shall be done, even when the area appears to be the same, if any part of the real estate is not of the character mentioned in the contract.

"The rescission in such case shall only take place at the will of the vendee, when the inferior value of the thing sold exceeds one-tenth of the price agreed upon.

"Sec. 1373.—If in the case of the preceding section there is greater area or number in real estate than those mentioned in the contract, the vendee shall be obliged to pay the price of the excess if the greater area or number should not exceed one-twentieth of those mentioned in the contract; but should it surpass said one-twentieth, the vendee may choose between paying the greater value of the estate or withdrawing from the contract.

"Sec. 1374.—In the sale of real estate made for a fixed price and not at the rate of a specified sum for a unit of measure or number, the increase or decrease of the same shall not be considered, even when greater or less area or amount than that stated in the contract may be found.

"The same shall take place when two or more estates should be sold for a single price; but, if besides mentioning the boundaries, which are indispensable in every conveyance of real estate, their area and number should be designated in the contract, the vendor shall be obliged to deliver all that is included within said boundaries, even when they exceed the area or number specified in the contract; and, should he not be able to do it, he shall suffer a re-

duction in the price, in proportion to what is lacking in the area
or number, unless the contract be annulled by reason of the vendee
not accepting the failure to deliver what had been stipulated.

"Sec. 1375.—The actions arising from the three preceding sec-
tions shall prescribe after six months, counted from the day of the
delivery."

It seems that the sales by Margarida & Company to To-
rres Grau and Catlin were for lump sums, but from the
registrar's certificate admitted in evidence an exact conclu-
sion can not be reached on that point. What is evident from
the certificate, from the title deeds and from the testimony
of witnesses and experts is that from the first both lots were
bounded by the sea on the north. The mere execution of a
deed is sufficient to make it understood that the grantee is
put into possession of the property acquired. Therefore, it
should be assumed that Torres Grau and Catlin were given
possession of the said properties by Margarida & Company
in 1904 and 1906, respectively. But there is also in the re-
cord the testimony of a witness which it is well to transcribe
in order to form an accurate idea of the actual facts. We
refer to the testimony of H. W. Dooley which was in part
as follows:

"I was friendly with Catlin and spoke to him about the sale of
the land because I wished to purchase it, but soon afterwards Catlin
sailed for the United States and died. Then I spoke to Catlin's
brother, who wished to sell the land, and was negotiating the pur-
chase and sale with him when he died also. In the year 1915 I
again opened negotiations with them for the purchase of the prop-
erty. At first the property had a wire fence around it, but after-
wards when Catlin was away it was almost absolutely abandoned,
because Catlin had no representation in this country. In December
of 1914 or January of 1915 I noticed some posts there. There was
a cartload of them, but they were not set in the ground—25 or 30
posts were lying there. I saw Juan Margarida there during four
or five weeks. One day I found him there with Paco Torres. It
was early in February, for I wrote about it to the attorney of the
Catlin estate on February 17, 1915. On that day Margarida said

nothing, but Paco Torres told me that he was purchasing a parcel of land from Margarida at that place. They showed me the place where Bolivar's house now stands. I told him that Margarida had no right to sell that land which had been already sold to Catlin and the purchase of which I was negotiating with Catlin. At the same time, in the year 1914, I was constructing a walkway from King's Court to the property of Del Valle.''

It may be seen, therefore, that Margarida & Company were under the obligation to deliver and did deliver to Catlin what they had sold to him in accordance with the boundaries. The sale by Torres Grau to Catlin was made in 1905 and the two properties together form a square which fits in with the other properties appearing in the general plan for the urbanization of that zone. The small property acquired from Torres Grau is very important to complete the square for the very reason of its boundary with the sea.

If Margarida & Company, after having sold the lots to Torres Grau and to Catlin, became convinced that Catlin had within the boundaries a greater area than that mentioned in his deed, they should have acted in accordance with the provisions of the Civil Code cited, but after a lapse of some eight years they could not validly, by measuring the number of meters stated in Catlin's title deed beginning from the street on the south, take away from him the northern boundary with the sea and sell the excess balance to another person. This was what, according to the evidence, Margarida & Company did. Of course, this statement is made only for the purposes of this suit. Margarida & Company are not a party to this suit and, therefore, can not be prejudiced by it.

All this being so, it is necessary to conclude that this is an actual case of a double sale which must be governed by the rules established by the Legislature, as follows:

''Sec. 1376.—If the same thing should have been sold to different vendees, the ownership shall be transferred to the person who

may have first taken possession thereof in good faith, if it should be personal property.

"Should it be real property, it shall belong to the person acquiring it who first recorded it in the registry.

"Should there be no entry, the property shall belong to the person who first took possession of it in good faith, and, in the absence thereof, to the person who presents the oldest title, provided there is good faith."

And as it appears that the sales to Torres Grau and to Catlin, who are the plaintiff's predecessors in interest, were made in 1904 and 1906 and were recorded in 1905 and 1906, and the same property was sold to Quiñones, the predecessor in interest of the defendants, in 1914 and recorded in that year, it is necessary to conclude that as the plaintiff's title was first recorded in the registry and also first acquired, the conflict, according to law and justice, should be adjusted in his favor.

But the defendants allege that they are third persons and invoke article 34 of the Mortgage Law and the decision of this court in *Ayllón et al.* v. *González et al.*, 28 P. R. R. 61.

In the *Ayllón Case* there was a different legal situation, and as far as article 34 of the Mortgage Law is concerned, its own language shows that instead of favoring it prejudices the position of the defendants.

Article 33 of the Mortgage Law lays down the principle that acts or contracts which are null and void under the laws are not validated by their admission to record and article 34 limits the scope of that principle by providing that "instruments or contracts executed or entered into by a person who, according to the registry, has a right to do so, shall not be invalidated with regard to third persons after they have been recorded, even though the interest of such party should subsequently be annulled or terminated by virtue of a prior deed which was *not recorded* or for reasons which do no clearly appear from said registry." (Italics volunteered.)

It may be admitted that the defendants are third persons and that they acquired from one who appeared to be the owner according to the registry (Ramona Aragunde), but as their title is annulled by virtue of prior titles (Torres Grau and Catlin) which were recorded in the registry, the principle of said article 33 must govern absolutely. The sale by Margarida & Company to Quiñones was null and void. They could not convey a property which they had already sold and which the grantee had recorded in the registry. The good faith of Quiñones, of Ramona Aragunde and of the defendants and the recording of their titles in the registry, are not sufficient. This would have been the case only under a special provision of section 1376 of the Civil Code, if Torres Grau and Catlin had failed to record their titles or had recorded them after Quiñones had recorded his. In this case there is involved no question of prescription.

Something was insinuated at the hearing to the effect that the plaintiff, in acquiring the property in 1917, had knowledge of the state of facts created by virtue of the second sale by Margarida & Company to Quiñones in 1914. Such knowledge has no bearing on the question. Admitting that he had such knowledge, the only conclusion that could be reached is that the plaintiff, in purchasing from the heirs of Catlin, assumed the risk of losing a part of the land, but under the terms of the purchase as made, i. e., the grantors conveying all of their rights and interest, the plaintiff was placed in Catlin's position.

Let us examine now the question of damages. In the complaint it was alleged that the possession by the defendants was in bad faith and had caused the plaintiff damages amounting to $1,000. At the hearing it was attempted to prove that the use of the property was profitable and that the possession of the lot had been an obstacle to the urbanization, the amount of the damages being estimated in the said sum of $1,000. There is nothing in the record show-

ing actual bad faith on the part of Quiñones, Aragunde or the defendants. Apparently they acted in good faith and all or some of them will suffer actual damages by the decision of this case. That being the case, we think that justice in this case requires the decision that the land held by the defendants belongs to the plaintiff and should be restored to him, and no more.

Finally, there is a matter that can not be ignored by this court and that is the fact of the house standing on the lot in the possession of the defendants. The house was not built by Catlin. It was built by one who in good faith believed that he was the owner of the land on which he was building. Therefore, the case must be governed by the provisions of section 370 of the Civil Code, as follows:

"Sec. 370.—The owner of the land which has been built upon, sown, or planted in good faith, has the right to appropriate as his own, the work, sowing or planting, by previously paying the indemnity specified in sections 455 and 456 of Chapter III, Title V, and to oblige the person who has built or planted to pay him the value of. the land, and the person who sowed, to pay the corresponding rent."

See the case of *People* v. *Municipality of San Juan,* 19 P. R. R. 625, 637.

By virtue of all the foregoing the judgment appealed from must be reversed and another entered adjudging that the lot held by the defendants belongs to the plaintiff; that the title of the defendants to the said lot is null and void; that there is no recovery of damages, and that the question of the house shall be governed by the provisions of section 370 of the Civil Code, the case to be remanded to the district court for a settlement of this last point.

*Reversed.*

Justices Wolf, Aldrey and Hutchison concurred.

Mr. Justice Franco Soto took no part in the decision of this case.

ON RECONSIDERATION.

On motion for reconsideration Mr. Chief Justice Del Toro, on June 20, 1922, delivered the following opinion of the court:

The plaintiff-appellant moves for a reconsideration of the judgment of this court of May 31, 1922, alleging that this court erred: 1st, in holding that the possession of the defendants was in good faith; 2nd, in applying section 370 of the Civil Code; 3rd, in not imposing the costs upon the defendants.

1. After a careful examination of the facts and the law the court concluded that it had not been shown that there was bad faith on the part of the defendants. The appellant relies on the testimony of Dooley. Dooley testified that his conversation with Margarida and with Paco Torres, the husband and attorney in fact of Ramona Aragunde, took place early in February of the year 1915. According to the public deeds and the registry, Margarida sold the property to Quiñones on July 1, 1914, and the sale was recorded on July 20, 1914. Therefore, at the time of Dooley's remonstration the lands had already been sold by Margarida to Quiñones and the latter had recorded his title in the registry. The wife of Torres did not purchase from Margarida, but from Quiñones, and it is very doubtful that what Dooley said could have the effect of destroying her good faith. But neither Margarida, nor Quiñones, nor Aragunde has been made a defendant in this action. With regard to the good faith of Francisca Fernández, the real defendant, there is not the slightest doubt.

As a question of fact the court found that bad faith on the part of the defendants had not been shown. The judgment should not be reconsidered because of the error first assigned.

2. Nor should it be because of the second. The plaintiff has been given all that he is entitled to. The house was

built by a person who purchased the land from one who was the owner according to the registry and one whom he believed to be the owner. For this class of cases the Legislature enacted section 370 of the Civil Code.

' 3. The question of costs is discretional and the court still believes that it exercised this power correctly, notwithstanding the statements contained in the motion for reconsideration. The defendants were not guilty of temerity in defending. The issue was not clear. The district court thought that the controversy should be adjusted in·favor of the defendants.

By virtue of all of the foregoing the motion for reconsideration must be overruled.